UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOAN ELIZABETH CHENEY,

        Plaintiff,

v.                            Case No. 2:21-cv-69-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.

_____/

**<u>ORDER</u>**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 164-67). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 96-97, 106-07). Thereafter, Plaintiff requested an

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

administrative hearing (Tr. 112-13).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared telephonically and testified (Tr. 35-64).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-26).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 159-60).  Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

**B.    Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1961, claimed disability beginning March 30, 2018 (Tr. 164).  Plaintiff obtained a high school education (Tr. 185).  Plaintiff's past relevant work experience included work as an office manager and administrative assistant (Tr. 40, 185).  Plaintiff alleged disability due to supraventricular tachycardia, degenerative disc disease, lumbar radiculopathy, lumbar stenosis with neurogenic claudication, intercostal neuralgia, osteoarthritis of the cervical spine, spondylolisthesis at L4-L5, lumbar facet arthropathy, obesity, depression, and anxiety (Tr. 39, 184).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through September 30, 2023, and had not engaged in substantial gainful activity since March 30, 2018, the alleged onset date (Tr. 17).  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease, thoracic degenerative disc disease, radiculopathy, and

obesity (Tr. 18).   Notwithstanding the noted impairments, the ALJ determined

Plaintiff did not have an impairment or combination of impairments that met or

medically equaled one of the listed impairments in 20 C.F.R.  Part 404, Subpart P,

Appendix 1 (Tr. 20-21).  The ALJ then concluded that Plaintiff retained a residual

functional capacity ("RFC") to perform light work as defined in 20 C.F.R.

§ 404.1567(b), with the following limitations:

> [Plaintiff can] lift and carry up to 20 pounds occasionally and lift and
> carry up to 10 pounds frequently. Standing and walking are limited to
> about six hours per day; sitting up to six hours per day; and in
> combination, eight hours per day with normal breaks. Never climb
> ladders, ropes or scaffolds. [Plaintiff] should avoid all exposure to
> extreme cold. [Plaintiff] is limited to no more than occasional
> exposure to no more than moderate levels of environmental irritants
> such as fumes, odors, dusts, or gases. [Plaintiff] should avoid all
> exposure to hazards such as unprotected moving mechanical parts and
> unprotected heights

 (Tr. 21).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective

complaints and determined that, although the evidence established the presence of

underlying impairments that reasonably could be expected to produce the

symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting

effects of her symptoms were not entirely consistent with the medical evidence and

other evidence (Tr. 22).   Considering Plaintiff's noted impairments and the

assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could

perform her past relevant work as an office assistant (Tr. 25-26, 58-62).

Accordingly, the ALJ found Plaintiff not disabled (Tr. 26).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or

her age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Ingram*, 496 F.3d at 1260 (citation omitted).  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether

the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

**III.**

Plaintiff argues the ALJ erred by (1) failing to properly evaluate Plaintiff's subjective complaints of pain; and (2) failing to properly account for Plaintiff's mental limitations in the RFC finding.  Plaintiff further argues that the ALJ lacked constitutional authority to adjudicate her claim.  For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

> **A.    Subjective Complaints of Pain**

First, Plaintiff argues the ALJ erred in discounting Plaintiff's subjective complaints of pain by improperly evaluating the medical evidence and failing to consider Plaintiff's activities of daily living and work history (Doc. 22 at 20-29).  In response, the Commissioner contends substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints were inconsistent with the evidence of record, including objective medical findings, diagnostic imaging, the efficacy of Plaintiff's treatment, and activities of daily living (*id*. at 29-34).

In addition to the objective evidence of record, the Commissioner must consider all of the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.  *See* 20 C.F.R. § 404.1529(a).  A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability,

however.  42 U.S.C. § 423(d)(5)(A).  To establish a disability based on subjective symptoms, a claimant must show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If this step is satisfied, the ALJ then "evaluate[s] the intensity and persistence of an individual's symptoms such as pain and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities."  Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529(c).  In evaluating intensity and persistence, the ALJ considers "all of the available evidence from [a claimant's] medical sources and nonmedical sources[,]" including objective medical evidence, daily activities, precipitating and aggravating factors, medications and treatments available to alleviate symptoms, the type, dosage, effectiveness, and side effects of medications, and other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5-7.  If the ALJ elects not to credit a claimant's subjective testimony, he must articulate explicit and adequate reasons.[2]  *Dyer*, 395 F.3d at 1210

---

[2] In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms.  The SSA eliminated the use of the term "credibility" from its sub-regulatory policy, as the regulations do not use this term.  SSR 16-3p, 2017 WL 5180304, at *2.  This change "clarif[ied] that the subjective symptom evaluation is not an examination of an individual's character."  *Id.*

(quotation and citation omitted).  In the end, subjective complaint evaluations come within the province of the ALJ.  *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citations omitted).  A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record.  *Id.* (citing *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam)).

Here, the ALJ acknowledged Plaintiff's testimony "that she could not do her past work because of pain, poor concentration and unreliability" (Tr. 22, 44-45, 50-51, 54-57).  He further stated:

> [Plaintiff] estimates she would call out sick at least once a week due and would not be dependable. She is unable to work due to back pain despite undergoing treatment such as injections, as they only provide relief for a short time. Once the injection wears off, she is unable to do much. Her back pain is very uncomfortable and radiates to the hips, worse in the right and down the leg. The pain disrupts her sleep. She cannot sit for eight hours and needs to get up and down. She can stand and walk very short periods. She does not take pain medication, as she is a recovering alcoholic and is afraid to take a narcotic. She only uses over the counter Tylenol for pain and a muscle relaxant. She takes Wellbutrin for depression and anxiety. She takes medications for allergies and GERD

(Tr. 22).  However, the ALJ concluded "[a]fter careful consideration of the evidence," that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 22).

In so finding, the ALJ considered Plaintiff's treatment history.  The ALJ acknowledged "[t]he record shows the claimant consistently underwent pain injections to the lumbar and thoracic spine; which support her allegations of severe pain.  However, these pain injections were generally reported as being effective in nature and at times, they completely eliminated her pain" (Tr. 24).

The ALJ noted that Plaintiff's family doctor referred her to Gilberto Acosta, M.D., for pain management and "[o]n February 19, 2018, [Plaintiff] reported that the epidural shots were working for her lumbar pain" (Tr. 22, 428).  Plaintiff continued to receive regular injections to the thoracic and lumbar spine and "reported significant improvement with pain management services" (Tr. 22).  For example, on June 7, 2018, Plaintiff "reported that the injections she received at the T7-T8 level on May 3, 3018 [sic] provided 70% relief" (Tr. 22, 473-74).  She reported her pain level was 3/10, and the pain and functional impairment were mild (Tr. 22, 474).  She also reported improved mobility (Tr. 22, 474).  On July 31, 2018, Plaintiff found injections at the L5-S1 level "were not effective, as they provided less than 50% relief for 3-4 days" (Tr. 22, 469).  The ALJ considered subsequent treatments notes "show[ing] [Plaintiff] continued to undergo injections to the lumbar spine in August, October and November with up to 90% improvement of pain but lasting no more than 10 days" (Tr. 22, 504, 509).

On February 27, 2019, Plaintiff began pain management treatment with Marc Rosenblatt, D.O., for lower back pain radiating into both lower extremities (Tr. 22, 582).  Plaintiff reported "some relief" from prior injections (Tr. 22, 582).

On March 25, 2019, Plaintiff underwent a right L5 transforaminal epidural steroid injection (Tr. 23, 646-53, 852-53).  On April 11, 2019, Plaintiff underwent a second right L5 transforaminal epidural steroid injection after being "extremely pleased with the first procedure . . . stating that 75% of the radicular pain in the leg is gone" (Tr. 23, 859-60).  Similarly, on a follow-up visit on May 9, 2019, Plaintiff was "very pleased with the lumbar epidural injection . . . stating that the radicular pain [was] totally gone" (Tr. 23, 866-68).  While Plaintiff continued to report midthoracic pain, she "subsequently underwent a series of trigger point injections to the thoracic spine, which also significantly improved her pain and left her with no pain in the thoracic region" (Tr. 23, 868, 872-74, 883).  The ALJ acknowledged that "[t]he pain did return gradually and the injection lost efficacy over time but still reduced her pain level" (Tr. 24, 883, 891, 897, 899-90, 905-10).

Plaintiff argues her diminished relief from injections refutes the ALJ's conclusion that her pain was not as limiting as described (Doc. 22 at 22).  She points to the July 17, 2019 notes of Remone Yousif, M.D., her pain management specialist, indicating "her last injection was only effective for couple of weeks" (Tr. 914).  She also relies on Dr. Yousif's notes from January 6, 2020, limiting her to four injections annually, based on "the risks with multiple corticosteroid injection within small window of time" (Tr. 909-10).  However, as the ALJ noted, while "as of lately the relief is not lasting as long[,]"  Dr. Yousif also indicated on January 6, 2020, that "previous injections have been helpful and they continue to be so" (Tr. 909).  And, in addition to the epidural steroid injections, Dr. Yousif planned

on performing trigger point injections without corticosteroids, after Plaintiff had indicated the trigger point injections had provided "good relief" and "would like to have these done as well" (Tr. 909-10; *see also* Tr. 198).

Additionally, the ALJ found Plaintiff's allegations of disabling pain levels "not supported as she is not considered to be a surgical candidate" (Tr. 24). Based on Plaintiff's physical examination and MRIs, on June 13, 2019, neurosurgeon Constantine Plakas, M.D., found no "significant central canal or foraminal stenosis that would explain [Plaintiff's] pain[,]" and therefore, "would not recommend any surgical intervention" (Tr. 23, 24, 1034). Instead, Dr. Plakas recommended that Plaintiff continue with pain management and consider a spinal cord stimulator trial (Tr. 1034).

The ALJ considered that Plaintiff "elected to undergo a spinal cord stimulator trial on September 11, 2019 but the procedure was stopped due to a vasovagal episode" (Tr. 23, 902-03). The ALJ noted that the procedure was to be rescheduled with IV sedation and that "[i]n the meantime, [Plaintiff] continued to get pain injections to the thoracic and lumbar spine" (Tr. 23, 903).

In addition to the treatment history, the ALJ considered diagnostic imaging, noting "[a]n MRI of the lumbar spine, performed on March 5, 2019, showed multi-level degenerative disc changes; multi-factorial central canal and neural foraminal stenosis; but no significant interval changes when compared to a previous lumbar MRI study from August 10, 2015" (Tr. 23, 24, 626, 648, 1033). The ALJ also found that "[a]n MRI of the thoracic spine performed on April 16, 2019, showed focal

thoracic cord flattening at T5-T6 and a suspicious lesion at T8; however, a subsequent bone scan was unremarkable" (Tr. 23, 868, 1033). Indeed, based on the unremarkable bone scan, Dr. Plakas noted "[t]here is no evidence of abnormal activity in the thoracic spine [and] [t]he lesion seen in the thoracic spine MRI meet[s] criteria for benign intraosseous hemangiomas" (Tr. 1033). As noted above, Dr. Plakas advised against surgical intervention (Tr. 1034).

The ALJ also considered Plaintiff's physical examination findings, noting "physical and neurological examinations generally showed normal gait, no use or need for an assistive device, normal motor strength, normal reflexes, and normal/functional range of motion" (Tr. 24). Physical examinations from April 24, 2018, and August 23, 2018, noted back pain, but indicated Plaintiff had normal reflexes and coordination, and no cranial nerve deficit (Tr. 447, 726). In October of 2018, when Plaintiff was evaluated for sore throat , she reported no back pain, and physical examination similarly showed normal reflexes and coordination, and no cranial deficit (Tr. 766-67). On January 31, 2019, musculoskeletal examination revealed mild tenderness, while neurological examination showed no cranial nerve deficit (Tr. 548-49, 590). On February 27, 2019, physical examination revealed intact cranial nerves, 5/5 motor strength evaluation, with the exception of the right tibialis anterior which was 4/5, symmetrical deep tendon reflexes, and while "[e]valuation of the lumbar spine [did] reveal bilateral paraspinal spasm with multiple trigger points[,]" Plaintiff had functional range of motion (Tr. 22, 585-86, 618). On May 28, 2019, musculoskeletal exam notes revealed normal range of

motion, and no tenderness or deformity (Tr. 697). And Dr. Plakas's June 13, 2019 physical examination revealed Plaintiff had normal gait and muscle tone, full range of arms and legs, normal cervical and lumbar range of motion, no pain to palpation of the cervical, thoracic, or lumbar spine, intact sensation, and negative straight leg and cross straight leg raises bilaterally (Tr. 1040-41).

On April 4, 2019, Eshan Kibria, D.O., performed a consultative examination of Plaintiff (Tr. 23, 679-80). The physical examination revealed "lumbar range of motion was moderately limited in all directions[,]" and straight leg raise was positive bilaterally (Tr. 23, 680). The motor exam indicated "[w]ell developed and symmetrical musculature[,] [n]o evidence of any weakness," and no atrophy or fasciculations" (Tr. 680). Motor strength of all four extremities was 5/5, including handgrips (Tr. 23, 680). Sensory testing showed no evidence of loss, Plaintiff had normal station and gait, and no assistive device was needed or used (Tr. 23, 680). Dr. Kibria noted history of lumbar back pain with radiculopathy (Tr. 23, 680).

On July 17, 2019, Plaintiff exhibited "[m]oderate tenderness to palpation over the lumbar paraspinals" and "[b]orderline positive facet loading" (Tr. 896, 920). She also had a positive right straight leg raising test and decreased sensation "along the L4-L5 and L5-S1 dermatome on the right" (Tr. 896, 920). However, she was "[a]ble to heel and toe raise without signs of weakness," had a normal gait, and "5/5 all lower extremity muscle groups bilaterally" (Tr. 896, 920). These findings were also noted on August 13, 2019 (Tr. 900). And on January 6, 2020, Plaintiff

had tenderness to palpation in multiple trigger points of the cervicothoracic paraspinals and positive straight leg raising, but intact motor examination (Tr. 909).

The ALJ acknowledged that "[a]t times, exams did show positive straight leg raise testing and some sensory deficits[,]" but concluded "these findings were not consistent and not evident on neurosurgical evaluation" (Tr. 24).

The ALJ further considered the opinions of the State Agency reviewing physicians (Tr. 24-25). On November 6, 2018, and April 12, 2019, they opined Plaintiff could perform light work with environmental limitations (Tr. 24, 72-74, 90-92). The ALJ found these opinions persuasive, as they were consistent with the medical evidence generally showing Plaintiff had normal sensation, motor strength, gait, reflexes, and negative leg raising (Tr. 24). However, based on some findings of reduced range of motion and tenderness, and MRIs of the spine indicating abnormalities requiring long-term management, but no surgical intervention, the ALJ imposed additional postural and environmental limitations (Tr. 21, 25).

Based on this medical evidence, the ALJ concluded that "there is no support for [Plaintiff's] allegations of inability to lift only 10 pounds; inability to work a full workday; or excessive absenteeism" (Tr. 24). The ALJ further stated that the light RFC "along with postural and environmental limitations more than accommodates [Plaintiff's] complaints" (Tr. 24).

Plaintiff argues the ALJ failed to consider her activities of daily living when assessing her subjective complaints, only addressing them in the context of evaluating the severity of her mental impairments (Doc. 22 at 25-26). However,

consideration of daily activities is but one factor in evaluating Plaintiff's subjective complaints. *DeMaris v. Barnhart*, 306 F. Supp. 2d 863, 871 (N.D. Iowa 2004) ("Although these daily activities alone do not support or disprove disability, they are only one factor to consider in evaluating the subjective complaints of the claimant."). As discussed above, the ALJ found the medical evidence did not support the extent of Plaintiff's subjective complaints, and that was sufficient. *See, e.g., Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 767 (11th Cir. 2014)[3] (finding the ALJ's discussion of objective medical evidence of record provided "adequate reasons" for the decision to partially discredit the claimant's subjective complaints); *Taylor v. Saul*, 544 F. Supp. 3d 1235, 1240 (M.D. Ala. 2021) (citation omitted) ("The ALJ's reliance upon the objective medical evidence and Plaintiff's response to treatment are adequate reasons to partially reject Plaintiff's subjective complaints."); *Turk v. Kijakazi*, No. 3:20-cv-490-SMD, 2022 WL 672152, at *5 (M.D. Ala. Mar. 7, 2022) (finding the ALJ's explanation of the objective medical evidence sufficient reason to discount the plaintiff's subjective allegations.).

Further, the ALJ discussed Plaintiff's daily activities at step two of the sequential evaluation process, including Plaintiff's reports that she cooked, cleaned, drove, shopped, paid bills, and managed financial accounts, demonstrating that he considered Plaintiff's condition as a whole (Tr. 19, 202-05, 495). And the record shows Plaintiff worked during the relevant time as a personal shopper, delivering

---

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

food to homes, which the ALJ found inconsistent with an allegation of work-precluding disability (Tr. 17, 24, 43-44, 563).

Plaintiff also argues the ALJ failed to consider her "outstanding 45-year work history" in his evaluation of Plaintiff's subjective complaints (Doc. 22 at 28). Contrary to Plaintiff's argument, in assessing Plaintiff's RFC, the ALJ did consider Plaintiff's work history.  The ALJ noted Plaintiff

> quit her job in Boston to move to Florida.  Thus, work ceased due to a move rather than a disabling impairment. Moreover, she looked for work and she was able to find a job after relocating to Florida but ultimately was not retained. She subsequently has performed work on a part-time basis and continued to do so past her alleged onset date, which is inconsistent with her allegations of disabling pain and functional limitations

(Tr. 24).

The ALJ also considered Plaintiff's work at step one of the sequential evaluation process.  The ALJ noted Plaintiff's work during the relevant period, as a personal shopper, delivering food to homes, and as a cashier, which involved light cleaning, and found "this post-alleged onset date work activity is more consistent with the ultimate findings of this decision than with an allegation of work-precluding debility" (Tr. 17, 43-44, 563).

Further, at step four, the ALJ considered Plaintiff's past relevant work as an office assistant, and found this work was "performed long enough for [Plaintiff] to achieve average performance" (Tr. 26).  At the hearing, the ALJ elicited testimony from Plaintiff and the vocational expert regarding past relevant work (Tr. 40-45, 55-56, 58-59).  Based on the RFC and the testimony of the VE, the ALJ concluded

Plaintiff could perform the requirements of the past relevant work.  Thus, the ALJ considered Plaintiff's work history while evaluating her subjective complaints, as well as at other steps of his decision.  *See Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *4 (M.D. Fla. July 22, 2022) (finding the ALJ "clearly considered Plaintiff's work history" where the ALJ referenced past relevant experience and "concluded that Plaintiff was '[s]killed' in each of these occupations."); *see also Rios v. Acting Comm'r of Soc. Sec.*, No. 8:16-cv-152-T-PDB, 2017 WL 4216467, at *10 (M.D. Fla. Sept. 22, 2017) ("The ALJ's decision demonstrates he was aware of and considered Rios's strong work history . . . but found her statements about the severity of her symptoms not entirely credible for other reasons.  He was not required to do more."); *Coleman v. Astrue*, No. 8:11–cv–1783–T–TGW, 2012 WL 3231074, at *5 (M.D. Fla. Aug. 6, 2012) ("While the [ALJ] did not discuss the plaintiff's work history specifically in the context of her credibility finding, she obviously considered the plaintiff's work history in making her decision.").

Thus, the Court is not persuaded by Plaintiff's contention that the ALJ failed to examine a number of the factors for evaluating Plaintiff's subjective symptom allegations.  As previously discussed, the ALJ thoroughly considered the evidence of record in conducting a subjective symptom determination.  And, as the Eleventh Circuit has stated, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to

conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer*, 395 F.3d at 1211 (quoting *Foote*, 67 F.3d at 1561).

Here, the ALJ considered Plaintiff's physical examination findings, treatment history, and radiology studies, and appropriately found them to contradict Plaintiff's subjective complaints.  The subjective symptom evaluation is the province of the ALJ and this Court declines to disturb it given the substantial supporting evidence in the record cited by the ALJ.  *See Mitchell*, 771 F.3d at 782; s*ee also Lingenfelser v. Comm'r of Soc. Sec.*, No. 6:16-cv-921-ORL-DCI, 2017 WL 4286546, at *6 (M.D. Fla. Sept. 27, 2017) (finding the claimant's argument that the evidence as a whole preponderates in favor of finding the claimant credible without merit as "[t]he issue is not whether there is evidence supporting Claimant's testimony concerning her symptoms, but whether there is substantial evidence, when viewing the record as a whole, to support the ALJ's reasons for discounting Claimant's credibility").  On this record, the ALJ did not err in considering Plaintiff's subjective complaints.

### B.    The ALJ's Consideration of Plaintiff's Mental Limitations

Next, Plaintiff contends the ALJ erred at step four of the sequential evaluation process by failing to include Plaintiff's mental limitations in the RFC determination.  Plaintiff argues the ALJ concluded at step three of the sequential evaluation process that Plaintiff had mild limitations in all four areas of mental functioning, and yet omitted those limitations when assessing Plaintiff's RFC (Doc. 22 at 34-35).  In response, the Commissioner contends the ALJ was not

required to include his mild ratings in the RFC assessment because they were not an assessment of Plaintiff's RFC (*id.* at 38).  Additionally, the Commissioner argues substantial evidence supports the ALJ's finding that "Plaintiff did not have a severe mental impairment or work-related mental limitations" based on Plaintiff's medical history documenting improvement of psychological symptoms with medication, no significant abnormalities on mental status examinations, and no hospitalization (*id.*).

Where a claimant has a "colorable claim of mental impairment," the ALJ must complete a Psychiatric Review Technique Form, ("PRTF").  *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).  In completing the PRTF, the ALJ evaluates how a claimant's mental impairments impact four broad functional areas, (the "paragraph B criteria"): "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."  20 C.F.R. § 404.1520a(c)(3).  The ALJ will rate the degree of limitation in each of these areas using the following five-point scale: "[n]one, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  If the ALJ rates the degrees of limitation as "none" or "mild," then the ALJ will generally conclude that the mental impairment is not severe and causes no more than a minimal limitation in the claimant's ability to do basic work activities.  20 C.F.R. § 404.1520a(d)(1).

The limitations identified in the paragraph B criteria are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.  *See* 20 C.F.R. § 404.1520a.  The evaluation of the paragraph B criteria is

not a determination of the claimant's mental RFC, as that determination "requires a more detailed assessment."  *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019).

Here, at step two of the sequential evaluation process, the ALJ considered Plaintiff's mental impairments of anxiety and depression, singly and in combination, and concluded they "[did] not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities" (Tr. 18).  In making this determination, the ALJ found Plaintiff had mild limitations in all four areas of the paragraph B criteria (Tr. 19-20).

Based on the mild limitations in the four broad areas of mental functioning, the ALJ was not required to include them in the RFC assessment.  *See Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979-80 (11th Cir. 2016) (finding the ALJ did not err by failing to include limitations in the RFC related to the plaintiff's non-severe mental impairment when the ALJ found that the plaintiff had only "mild" limitations in the paragraph B criteria); *Faircloth*, 2022 WL 2901218, at *2 ("Notably, an ALJ is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations in the PRT criteria."); *Sprague v. Colvin*, No. 8:13-cv-576-T-TGW, 2014 WL 2579629, at *6-7 (M.D. Fla. June 9, 2014) (concluding the ALJ did not err in the RFC finding by omitting mild functional limitations relating to a mental impairment).  As such, the ALJ committed no error at step four by omitting limitations caused by mental

impairments from the RFC assessment, because he assessed them as mild at an earlier step.

Moreover, the ALJ did consider Plaintiff's mental impairments when assessing the RFC, and concluded that they did not limit Plaintiff's ability to engage in work-like activities (Tr. 25). The ALJ considered the opinions of the State Agency psychological consultants who opined "no severe mental impairments and no more than mild limitations" (Tr. 25, 70-71, 87-88). The ALJ found these opinions persuasive as they were "supported by and consistent with the medical evidence of record" (Tr. 25). The ALJ relied on treatment notes from Salus Care indicating "psychiatric medications were generally effective in reducing symptoms" (Tr. 25; *see also* Tr. 18-19, 563, 567, 958, 962, 964, 968, 976, 984, 1008). The ALJ also noted "[a]t SalusCare, although she [was] diagnosed with depression, her cognition was reported to be 'WNL'; her judgement and insight were noted to be 'good' on a scale of 'good, fair, or poor'; she was noted to be coherent, logical and goal directed; and her psychomotor was noted to be normal" (Tr. 25; *see also* Tr. 18-19, 560-61, 563-64, 568, 570, 958, 960, 962, 968, 970, 972, 978, 980, 984, 986, 988, 992, 996, 1000, 1004, 1008, 1012, 1016, 1020). And Plaintiff "denied psychotic symptoms, hallucinations, delusions, paranoia, mania and suicidal ideation" and "did not require any voluntary or involuntary psychiatric hospitalizations" (Tr. 25; *see also* Tr. 18-19, 557, 560, 564, 568, 570, 960, 962, 970, 978, 986, 992, 996, 1000, 1004, 1012, 1016, 1020).

Accordingly, the ALJ properly evaluated the severity of Plaintiff's mental impairments and his decision that Plaintiff's mental conditions do not limit her ability to perform work-related activities is supported by substantial evidence.

## C.   The Constitutionality of the ALJ's Appointment

Lastly, Plaintiff contends she is entitled to a de novo review before a different ALJ because the ALJ who adjudicated her claim was not constitutionally appointed (Doc. 22 at 39-41).  Relying on *Seila Law*,[4] Plaintiff argues the Commissioner of the SSA was appointed under an unconstitutional statute limiting the President's authority to remove the Commissioner without cause, and thus, the Commissioner had no authority to delegate to the ALJ during the proceedings (*id*.).   The Commissioner agrees the statute limiting the President's authority to remove the Commissioner without cause violates the separation of powers (*id*. at 42).  However, the Commissioner argues the ALJ who decided Plaintiff's case had his appointment ratified by an *Acting* Commissioner of Social Security whom the President could have removed at will, and therefore his appointment was constitutional (*id*. at 42). The Commissioner also contends Plaintiff has not shown the constitutional violation she asserts caused her actual harm, namely the denial of her benefits claim (*id*. at 43).

---

[4] In *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), the Supreme Court held that the for-cause restriction on the President's executive power to remove the single Director of the Consumer Financial Protection Bureau (CFPB) violated the constitutional separation of powers. 140 S. Ct. at 2197.

The ALJ's decision was issued on May 28, 2020, and it relates to a hearing held on May 8, 2020 (Tr. 12, 33).  On July 16, 2018, former Acting Commissioner of Social Security Nancy Berryhill, who could be removed at will by the President, ratified the appointments of the current ALJs and approved those appointments as her own.  *See Raper v. Comm'r of Soc. Sec.*, No. 5:20-cv-597-PRL, 2022 WL 1078128, at *6 (M.D. Fla. Mar. 25, 2022).  Thus, the ALJ who decided Plaintiff's case was properly appointed during the entirety of the administrative adjudication of her case.  Indeed, when deciding this particular issue, judges in this district have repeatedly found the separation-of-powers argument to be meritless.  *See id.*; *see also Page v. Comm'r of Soc. Sec.*, No. 6:21-cv-258-LHP, 2022 WL 1619168, at *8-9 (M.D. Fla. May 23, 2022) (rejecting a similar challenge because the plaintiff's application was adjudicated after the Acting Commissioner ratified the appointments of the SSA ALJs, and therefore, the ALJ was constitutionally appointed during all relevant aspects of the decision); *Corns v. Comm'r of Soc. Sec.*, No. 8:20-cv-2605-VMC-SPF, 2022 WL 2975102, at *8 (M.D. Fla. June 30, 2022), *report and recommendation adopted*, 2022 WL 2966855 (M.D. Fla. July 27, 2022) ("Acting Commissioner Berryhill was not subject to the unconstitutional removal provision on which Plaintiff bases his claim, and any ratification of an ALJ by Acting Commissioner Berryhill would make that appointment constitutional."); *Concepcion v. Comm'r of Soc. Sec.*, No. 6:20-cv-2057-EJK, 2022 WL 2292950, at *9 (M.D. Fla. Mar. 3, 2022) (finding *Seila Law* did not apply where the ALJ was properly appointed at the time of his November 25, 2019 decision); *Perez-Kocher v. Comm'r of*

*Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *6 (M.D. Fla. Nov. 23, 2021), *report and recommendation adopted*, 2022 WL 88160 (M.D. Fla. Jan. 7, 2022) (finding the unconstitutional provision did not affect the plaintiff's case where the ALJ's decision was issued "well after the date of ratification of the ALJ"); *Johnson v. Kijakazi*, No. 8:20-cv-2117-AAS, 2022 WL 2292913, at *6 (M.D. Fla. Feb. 8, 2022) (finding the ALJ was constitutionally appointed where the ALJ heard and decided the case after the Acting Commissioner had ratified the appointments of the SSA ALJs and approved those appointments as her own).

Because Plaintiff's application was adjudicated after the Acting Commissioner ratified the appointments of the current SSA ALJs, her contention that the ALJ was unauthorized to decide her case is unavailing.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 26th day of September, 2022.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record